**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Chevelle & Holly Clements, as Co-Administrators | ) | |
| of the estate of DECYNTHIA CLEMENTS, | ) | |
| Deceased, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF ELGIN, a municipal corporation; | ) | |
| ELGIN POLICE OFFICER | ) | |
| Christian Jensen, individually and as | ) | |
| agent of the CITY OF ELGIN; and JOHN DOE | ) | |
| ELGIN POLICE OFFICERS 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW

Now come the Plaintiffs, Chevelle and Holly Clements, as Co-Administrators of the estate of DECYNTHIA SONYA CLEMENTS, deceased, ("Plaintiffs"), by and through their attorneys, Romanucci & Blandin, LLC and Action Injury Law Group, LLC, and make the following complaint against CITY OF ELGIN, a municipal corporation; Elgin Police Officer CHRISTIAN JENSEN; and JOHN DOE Elgin Police Officers 1-10:

## INTRODUCTION

1.     This is a Section 1983 Civil Rights action against Defendants for violations of DECYNTHIA SONYA CLEMENTS' constitutional rights. On March 12, 2018, Ms. Clements, an African American woman and a diagnosed schizophrenic, lost her life.  Without legal justification, Defendant Officer Christian Jensen shot two bullets into Ms. Clements' head and one into her chest, killing her.  Ms. Clements was 34 years old.

1

2.      On March 12, 2018 at approximately 12:30am, Ms. Clements was driving her 2003 Buick sports utility vehicle on Cedar Avenue in Elgin, when, Defendant Officer John Doe pulled her over. After the Officer approached her and returned to his patrol car, Ms. Clements drove away, heading east on River Bluff Road, and proceeded toward the I-90 Expressway.

3.      The John Doe Officer followed after her and was instructed to terminate the pursuit.

4.      Soon thereafter, Ms. Clements stopped her vehicle on the shoulder of westbound I-90. While stopped on the side of the road with two blown tires, a John Doe Officer parked his vehicle directly behind an Illinois Tollway Truck, despite the instruction to stop following Ms. Clements.

5.       Other Defendant Officers arrived on the scene.   When the Defendant Officers approached Ms. Clements vehicle, she was smoking a cigarette and communicating with the Officers.

6.      At no time did Ms. Clements drive her vehicle towards the officers or pose a danger or threat to the police or other civilians.

7.      After approximately one hour of determining that non-lethal force would be best to use, including various de-escalation techniques, Officer Jensen and a team of Defendant John Doe Officers surrounded Ms. Clements' vehicle armed with several non-lethal weapons including a protective shield, taser, a 40-caliber gun with rubber bullets, pepper balls and a K-9 Unit.  At the time, Ms. Clements' vehicle was pinned between two Elgin police vehicles and could not move.

8.      Based on previous contact with Ms. Clements, her behavior at the scene and knowledge of her mental health history of bi-polar disorder and schizophrenia, the Defendant Officers were aware Ms. Clements was having a mental health crisis and possibly suicidal.

9.     As Ms. Clements' car filled with smoke, Defendant Officers decided to extract Ms. Clements from the vehicle.  Obeying the Defendant Officers commands to exit her car, Ms. Clements opened the door, took one step out of the vehicle.  At that moment, and without any reasonable cause or provocation, Defendant Officer Jensen, shot Ms. Clements, who stood 5 foot 3 inches and 103 pounds in a downward direction twice in her head and once in the chest.  The shots caused multiple skull fractures, injury to her brain and bleeding around the brain and chest, causing her death.

10.     After shooting Ms. Clements, the Defendant John Doe Officers callously dragged her body on the ground without checking her vitals or rendering any medical aid.  Ms. Clements was pronounced dead at 2:44 am at St. Alexius Hospital in Hoffman Estates.


## JURY DEMAND

11.     The Plaintiffs hereby demand a trial by jury.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343, as well as supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §1367.

13.     Venue is proper in this Court under 28 U.S.C. §1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the Northern District of Illinois. Moreover, all of the parties reside in this Judicial District.

## PARTIES

14.     At all times relevant, Plaintiffs' decedent, DECYNTHIA SONYA CLEMENTS, was a citizen of the United States and a resident of the City of Elgin, County of Kane, State of Illinois.

15.     At all times relevant, the co-administrators of DeCynthia Clements' estate, Plaintiffs Chevelle & Holly Clements, are and were citizens of the United States and a resident the City of Elgin, County of Kane, Illinois State.

16.     On May, 12 2016, Plaintiffs Chevelle and Holly Clements were appointed as the co-administrators for the Estate of DeCynthia Clements by the Circuit Court of Kane County.

17.     Plaintiffs Chevelle and Holly Clements are the brother and sister-in-law of DeCynthia Clements.

18.     DeCynthia Clements is survived by Tyri Clements, her son and next of kin; her father Charles Clements; sisters Emmetia Sneed, Shanese Sneed, and Tonya Sneed; and brothers Chevelle Clements, Patrick Clements, Charles Clements, Jr.

19.     At all times relevant, Defendant, THE CITY OF ELGIN, is and was a municipal corporation organized under the laws of the State of Illinois.

20.     At all times relevant, the Defendant, CITY OF ELGIN, a municipal corporation, maintained, as a division of said municipal corporation, a certain police department, commonly referred to as the Elgin Police Department.

21.     The Elgin Police Department is located at 151 Douglas Ave., Elgin, County of Kane, Illinois State.

22.     At all times relevant, Defendant Officer CHRISTIAN JENSEN was an Elgin Police Officer employed by the Defendant CITY OF ELGIN.

23.     At all times relevant, when Defendant Officer CHRISTIAN JENSEN engaged in the complained of conduct, he was acting under color of law and in the course of his employment as an Elgin Police Officer.

4

24.     At all times relevant, Defendant JOHN DOE Elgin Police Officers 1-10 were Elgin Police Officers employed by the Defendant City of Elgin.

25.     At all times relevant, when Defendant JOHN DOE Elgin Police Officers 1-10 engaged in the complained of conduct, they were acting under color of law and in the course of their employment as Elgin Police Officers.

## FACTUAL ALLEGATIONS

### A. Background on decedent, DeCynthia Clements

26.     At all times relevant hereto decedent, DeCynthia Clements had been diagnosed with bipolar disorder, anxiety, and schizophrenia.

27.     On March 12, 2018, Ms. Clements was 34 years old, 5'3'' and 103 pounds.

28.     Previous to March 12, 2018, Defendant JENSEN had met co-administrators Chevelle and Holly Clements on more than three occasions and was familiar with their family.

### B. Ms. Clements is first contacted by the Elgin Police Department.

29.     On March 12, 2018 , at or about 12:31 AM, Ms. Clements was driving her 2003 Buick Rendezvous SUV on Cedar Avenue within the City of Elgin.

30.     Ms. Clements was stopped by Doe Officer on Cedar Avenue.

31.     After Doe Officer returned to his vehicle, Ms. Clements drove east bound on River Bluff and proceeded toward Eastbound I-90.

32.     Ms. Clements was alone in her vehicle at this time.

33.     At or about 12:31 an Elgin City police officer, Doe Officer 1, began to follow her vehicle without his lights activated.

34.     Doe Officer 1 followed Ms. Clements vehicle in an attempt to initiate a pre-textual traffic stop.

35.     Ms. Clements continued to drive and entered the entrance ramp to tollroad and expressway I-90.

36.     Doe Officer 1 was told to terminate his pursuit by a supervisor and did not follow Ms. Clements onto the entrance ramp.

**C. Ms. Clements is located on the shoulder of I-90.**

37.     Ms. Clements stopped her vehicle in the left hand side shoulder of westbound I-90 near the exit to Route 25.

38.     Upon information and belief, there was little to no traffic on westbound I-90 near the exit to Route 25 at this time.

39.     Ms. Clements' vehicle had 2 tires blown out on her vehicle at the time she was again approached by Elgin police officers.

40.     An unknown Elgin police officer, Doe Officer 2, parked his vehicle behind an Illinois tollway truck which was parked directly behind Ms. Clements.

41.     An unknown Elgin police officer, Doe Officer 2, approached the right side of Ms. Clements' vehicle and knocked on the front passenger window.

42.     Doe Officer 2 then approached the left side of the vehicle and knocked on the driver's side window.

43.     While Doe Officer 2 was knocking a second Elgin police officer, Doe Officer 3, came to the right side of the vehicle driven by Ms. Clements.

44.     Doe Officer 2 and Ms. Clements discussed her opening the door through the closed window of the driver's side door.

45.     At the time, Ms. Clements was a peaceably smoking a cigarette and communicating with officers.

46.     Ms. Clements attempted to pull forward in her vehicle with 2 tires blown out while the officers stood safely to the side of the vehicle.

47.     At this time, Ms. Clements could visually be observed driving her vehicle with both hands on the steering wheel.

48.     At no time did Ms. Clements drive her vehicle at or towards an officer, another vehicle, or a person.

49.     Ms. Clements was not a threat to any officers or other persons, was not armed, and did not verbally threaten any persons.

50.     At this time, Ms. Clements had not been told she was under arrest or not allowed to leave the scene.

**D. Additional officers arrive to the scene and escalate the situation.**

51.     At that time, a third officer, Doe Officer 4, arrived at the shoulder of I-90 with a K-9 unit.

52.     Ms. Clements attempted to pull her vehicle forward with 2 blown out tires and no officers in front of her vehicle or in danger of being hit.

53.     Doe Officers were aware that Ms. Clements was having an episode of some kind at the time of the incident.

54.     At that time, the state police created a road block to, upon information and belief, protect Ms. Clements and her vehicle from being hit with a semi-truck.

7

55.     For the first time, Doe Officers announced to Ms. Clements that she was under arrest and should step out of the vehicle.

56.     Additional officers arrived on scene and the police began to shut down westbound I-90.

57.     Doe Officers received information that Ms. Clements was "in a therapy session and started to have active auditory hallucinations" and had a history of similar issues.

58.     Upon information and belief, Doe Officers were in communication with individuals who were aware of Ms. Clements struggles with bipolar disorder, anxiety and schizophrenia.

59.     The Doe Officers and Defendant Jensen had no reason to believe Ms. Clements was in any way a danger to police or other civilians.

60.     The Doe Officers, including Defendant Jensen, were aware that Ms. Clements was suffering from a mental health episode and possibly under the influence of drugs.

61.     Doe Officers began to speak to Ms. Clements from over the barrier of eastbound I-90.

62.     Doe Officer 5 stated that all west bound lanes would need to be shut down because "She's suicidal- we don't want her pulling out."

63.     The Doe Officers, including Defendant Jensen, were aware the at Ms. Clements was suicidal and trying to hurt herself.

64.     Defendant Doe Officers received the cell phone number of Ms. Clements and attempted to reach her on her cell phone.

65.     Upon information and belief, Doe Officers were in communication with an individual or individuals who were aware that Ms. Clements was suicidal and had mental health disorders, and were provided means to contact her.

66.     Defendant Jensen indicated the Elgin Police Department's plan to approach the situation: "You guys end up approaching again, just… you know, we're just gonna slow play it."

67. Upon information and belief, the Elgin Police Department officers were aware of the viability and need to use "de-escalation" tactics and less-than-lethal or non-deadly force options.

68. Doe Officers made several statements indicating their understanding that a step-by-step plan should be used to avoid using deadly force except as a last resort:

a. "We are not gonna jump over the side and have [her] smash into an officer"

b. "We are just gonna go up and talk with her, see if we can get her out."

c. "I talked with Flurry, if this lasts long we might be bringing up the armor to try and pin her in, and then work on it that way."

d. "If she walks back too, just make sure we get me and one other and Garcia, so us three will stay on this side for cover and then you guys be the hands team on the opposite side."

e. "Right, we'll try and get her back 30 feet or so and try and get her [pronned] out before we approach."

f. "We will try to get her to stop, at worst we have the 40 [rubber bullets] and the barrier which is great."

g. "She's got the knife to herself, and she's taking herself hostage, then she wants to hurt herself. At that point, we're not going to end it for her."

h. "Tazer would be a good idea"

i. "That's why we have pepper ball."

j. "We are not letting her back up. She will get stopped at that point. We are not letting her go the wrong way on I-90."

k. "So if she does exit the vehicle, I'm sure you guys have gone over this, we'll try to order her back, we are not gonna have her cross this, we will try to order her to

9

get on the ground. If she does end up brandishing a knife running it at us, we will

go with the 40. If it ends up being closer, if she's coming toward us, try like the

tazer then and then we'll take other options. We'll hopefully be able to get her out

and walk back towards us we can prone her out on the ground, I don't how well

her direction following skills are gonna be right now though."

69.     Doe Officers had determined that the following less-than-lethal or non-deadly force

weapons and/or equipment would be best to use and had it available to them: tazer, highway

barricade, squad vehicles, armor, shield, pepper ball, and rubber bullets.

70.     Doe Officers, including Defendant Jensen, pinned Ms. Clements' vehicle between two

squad vehicles.

71.     "De-escalation" tactics and less-than-lethal or non-deadly force options were available to

the officers that they later declined to employ.

72.     Ms. Clements, experiencing a clear mental breakdown, lit two objects on fire within her

vehicle and threw them in to the back seat.

73.     Ms. Clements remained in the vehicle and was not violent or threatening to any

individuals.

74.     Ms. Clements had only indicated an intention to harm herself.

75.     The majority of officers were stationed over the highway barricade, where Ms. Clements'

suicidal behaviors such as holding the knife to her neck and setting her car on fire could be

observed.

76.     Those few officers on the westbound side of I-90 closest to Ms. Clements were within

squad vehicles.

77.     At that time, Doe Officer created more contingency plans for removing Ms. Clements, stating, "If she gets out and her hands are empty, me and one other jump this, we'll get her to the ground and get her in cuffs."

78.     Defendant Jensen and Doe Officers observed the fire within Ms. Clements' vehicle as the vehicle filled with smoke.

79.     While the fire burned within Ms. Clements' vehicle, a Doe Officer observed Ms. Clements with a knife to her own neck.

80.     After making these observations, a Doe Officer made the decision that Ms. Clements extraction was necessary to protect her.

81.     At that time, Doe Officer Chad jumped over the barrier to the westbound side of I-90 and was ordered to hold back.

82.     Doe Officer Chad indicated that he planned to return to the eastbound side of the barricade if Ms. Clements exited the vehicle with a knife, stating "I'm holding back.  I'll get back over if she jumps out with the knife."

83.     Ms. Clements began to scream loudly in pain from within the vehicle.

84.     Upon information and belief, Doe Officers and Defendant Jensen could hear Ms. Clements screaming in pain from within the burning vehicle.

85.     A Doe Officer indicated the officers' awareness that Ms. Clements was in danger stating, "We gotta get the window down."

86.     The Elgin Police Officers were monitoring Ms. Clements on I-90 for approximately one hour before the state police arrived to assist.

87.     At this time, Ms. Clements had not been violent, was not a threat to any officers or other persons and did not verbally threaten any persons.

11

**E. After over an hour of preparation, Ms. Clements is shot three times and killed despite numerous less-lethal options available to officers.**

88.     The Doe Officers and Defendant Jensen prepared stun guns, rubber bullets (40), pepper ball, and tazers for an extraction of Ms. Clements.

89.     The Doe Officers called for a "hands team" to assist with the extraction.

90.     A Doe Officer verbally ordered Ms. Clements out of the vehicle from the eastbound side of I-90, stating "Cynthia, step out of the car."

91.     A that time, Defendant Jensen stood on eastbound side of the highway barrier with a 40 [rubber bullets] pointed at Ms. Clements' driver's side window.

92.     Defendant Jensen and at least two other officers went over the highway barrier to the westbound side of I-90 where Ms. Clements vehicle is located.

93.     The Doe Officers, including Defendant Jensen, prepared to get Ms. Clements out of the vehicle, armed with several non-lethal weapons and standing a distance away:

      a.   Defendant Jensen held a shield in his left hand.

      b.   A Doe Officer, Paul, held a tazer.

      c.   A third Doe Officer held a 40 caliber with rubber bullets.

94.     Defendant Jensen, Doe Officer Paul, and another Doe Officer positioned themselves as follows: Defendant Jensen was closest to the barrier to his left and Ms. Clements vehicle, at the front of a diagonal line containing two other officers with his shield protecting himself and the officer behind him; a second officer stood behind and to the right of Defendant Jensen, partially behind the shield; a third officer stood to the right and behind of both officers, furthest from the vehicle and wielding a tazer.

12

95.     The two Doe Officers and Defendant Jensen prepared themselves to extract Ms. Clements *without using lethal force*, stating "Got the Tazer ready";  "Shield, shield"; "Who's got the tazer"; "Paul's got the tazer"; "Yes, we got to get her out boys"; and "Get the tazer set, get her out".

96.     After being repeatedly ordered to exit the vehicle, Ms. Clements' vehicle opened the driver's door in an effort to comply, with smoke pouring out.

97.      The majority of the Doe Officers were positioned on the eastbound side of I-90.

98.     Defendant Jensen and the two Doe Officers, including Officer Paul, were positioned on the westbound side of I-90 at least two car-lengths from the doorway of Ms. Clements' vehicle, where Ms. Clements was seated.

99.     Defendant Jensen and the Doe Officers on the westbound side of I-90 ordered Ms. Clements to leave the vehicle, stating "Let me see your hands, Cynthia- hands, hands, hands" and "Cynthia, get out of the car."

100.    Ms. Clements then began violently coughing from within the vehicle.

101.    At that time, despite the hours of attempts to use non-lethal methods and the plan to extract Ms. Clements without deadly force, Defendant Jensen drew his firearm and held it in his right hand while he continued to hold the shield in his left.

102.    Despite not being able to observe Ms. Clements or whether she had anything in her hands, Defendant Jensen and the Doe Officers on the westbound side ordered Ms. Clements to "drop the knife".

103.    At that time, Ms. Clements had not left the vehicle, and her hand and body were not visible.

104.    Complying with the given orders, Ms. Clements then took a single step outside of the vehicle with a small kitchen knife held in her left hand, while smoke poured out of the vehicle.

105.    Upon information and belief, Ms. Clements was attempting to escape the fire and responding to officer commands to leave the vehicle.

106.    Before Ms. Clements could take a second step, Defendant Jensen discharged his firearm three times at Ms. Clements, striking her twice in the head and once in the chest.

107.    Ms. Clements was shot at immediately upon exiting the vehicle, according to one observing Doe Officer, the "second she came out of the car".

108.    Defendant Jensen fired 3 times in the direction of Ms. Clements in a downward direction, striking her in the chest and head.

109.    Doe Officer Paul discharged his Tazer before or simultaneous to the time Defendant Jensen fired his gun, before officers could observe whether the tazer had effected Ms. Clements.

110.    Upon information and belief, despite being readily available, the rubber bullets were never discharged.

111.    Upon information and belief, despite being readily available, the shield held by Defendant Jensen was never used.

112.    No other officers present at the scene discharged their firearms.

113.    None of the bullets fired were fired at close range.

114.    Upon information and belief, no officers were put in danger at this time.

115.    Upon information and belief, no officers attempted to utilize training on how to deal with Emotionally Disturbed Persons.

**F. After the shooting occurred, Ms. Clements' body is treated callously as officers reassure Defendant Jensen about his choice to take her life.**

116.    After ten seconds passed from the time Defendant Jensen fired three shots, an ambulance was called.

117.    The officers on the westbound side of the highway barrier did not check Ms. Clements' body for vitals while awaiting the ambulance.

118.    The officers on the westbound side of the highway barrier then dragged Ms. Clements' body by the hands to move her before checking for vitals or providing any aid as they waited for the ambulance.

119.    The Doe Officers dragged Ms. Clements for several feet without knowing if she was alive and with no regard for her body or well-being.

120.    Without checking for vitals, Doe Officers engaged in the following exchange with Defendant Jensen, determining not to provide Ms. Clements no medical aid as they await the ambulance:

> a.    Doe Officer: "We've got the subject shot. We're gonna need an ambulance. She is unconscious, not breathing. We have a car that's fully engulfed."
>
> b.    Doe Officer "No medical."
>
> c.     Defendant Jensen: "Shot in the head, bro."

121.    Before the paramedics arrived, the officers on the scene provided no medical attention to Ms. Clements.

122.    Before paramedics arrived and before vitals were checked, Doe Officers again dragged the body of Ms. Clements, because according to Defendant Jensen "unfortunately we had to [d]rag her because of the fire".

123.    Once the paramedics arrived, Defendant Officer Jensen told them: "She has a gunshot wound to the head. I'm just gonna need you to check on her. . . . yeah, I shot."

15

124. Defendant Jensen stated that his use of his firearm was an attempt to "get her out of the car, or else she was gonna burn alive".

125. Defendant Jensen was the ranking officer at the scene of the incident, until his superiors arrived after the shooting had occurred.

126. Only after the paramedics arrived, was any CPR administered to Ms. Clements.

127. Ms. Clements arrived at St. Alexius Hospital at 2:41AM and was pronounced dead at 2:44AM.

128. Ms. Clements was shot twice in the head causing multiple skull fractures, injury to the brain, and bleeding around the brain and once in the chest, causing her death.

129. All three shots were at a downward angle.

130. Components and fragments of a taser, including a long piece of yellow wire, metal fragments, and barb pieces were found in the hair and on the body of Ms. Clements.

131. Ms. Clements, in compliance with police commands, fled the vehicle fire as she intook black soot in her lungs, nostrils, and at the top of her tongue.

## CLAIMS FOR RELIEF

### Count I- 42 U.S.C. § 1983 - Excessive Force

#### (Estate of DeCynthia Clements v. Defendant Officer Christian Jensen)

132. Plaintiffs incorporate and re-allege all preceding paragraphs as though fully plead herein.

133. The aforementioned conduct of Defendant JENSEN constituted excessive force in violation of the United States Constitution.

134. At all material times, Defendant JENSEN was acting under color of state law as agent and employee of Defendant CITY OF ELGIN.

16

135.    At all material times, Defendant JENSEN had no reason to believe that Plaintiff's decedent was a danger to him or to other officers.

136.    At all material times, Defendant JENSEN did not have a reasonable fear of imminent bodily harm, nor did Defendant JENSEN have a reasonable belief that any other person was in danger of imminent bodily danger from Plaintiffs' decedent.

137.    The aforementioned conduct of Defendant JENSEN was objectively unreasonable.

138.    The aforementioned acts of Defendant JENSEN were undertaken intentionally, willfully, with malice, and with reckless indifference to DECYNTHIA CLEMENTS's constitutional rights.

139.    As a result of Defendant JENSEN's unjustified and excessive use of force, decedent DECYNTHIA CLEMENTS experienced conscious pain and suffering.

140.    As a result of Defendant JENSEN's unjustified and excessive use of force, decedent DECYNTHIA CLEMENTS experienced a total loss of her natural life.

WHEREFORE, CHEVELLE and HOLLY CLEMENTS, as co-administrators of the Estate of DECYNTHIA CLEMENTS, Deceased, respectfully requests that this Court enter judgment against Defendant Officer JENSEN, awarding compensatory damages in an amount in excess of seventy-five thousand dollars ($75,000.00), including medical and funeral expenses, attorney's fees, and punitive damages, and for any further relief that this Court deems fair and just.

## Count II- 42 U.S.C. § 1983 - Excessive Force- Failure to Intervene

### *(Estate of DeCynthia Clements v. Defendant John Doe Officers)*

141.    Plaintiffs incorporate and re-allege all preceding paragraphs as though fully plead herein.

17

142.    The aforementioned conduct of Defendant JENSEN and the conduct of JOHN DOE Elgin Police Officers 1-10 in failing to intervene to prevent the shooting, despite having the opportunity to do so, violated the rights of DeCynthia Clements under the Fourth Amendment to the United States Constitution to be secure in her person against unreasonable seizure and excessive force, and her right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries set forth above.

143.    At all material times, Defendant JENSEN and the JOHN DOE Elgin Police Officers 1-10 were acting under color of state law as agents and employees of Defendant CITY OF ELGIN.

144.    At all material times, Defendant JENSEN and the JOHN DOE Elgin Police Officers 1-10 had no reason to believe that Plaintiffs' decedent was a danger to them or any other people.

145.    At all material times, Defendant JENSEN and the JOHN DOE Elgin Police Officers 1-10 did not have a reasonable fear of imminent bodily harm, nor did they have a reasonable belief that any other person was in danger of imminent bodily danger from Plaintiffs' decedent.

146.    The aforementioned conduct of Defendant JENSEN and the JOHN DOE Elgin Police Officers 1-10 was objectively unreasonable.

147.    The aforementioned acts of Defendant JENSEN and the JOHN DOE Elgin Police Officers 1-10 were undertaken intentionally, willfully, with malice, and with reckless indifference to DECYNTHIA CLEMENTS's constitutional rights.

148.    Throughout the March 12-13, 2018, encounter with Ms. CLEMENTS, Defendant John Doe Officers had knowledge that the aforementioned conduct of Defendant Officer JENSEN and the JOHN DOE Elgin Police Officers 1-10  constituted unreasonably excessive force under the United States Constitution.

149.    Throughout the March 12-13, 2018, encounter with Ms. CLEMENTS, Defendant John Doe Officers had a realistic opportunity to intervene and prevent deprivation of Ms. CLEMENTS' constitutional rights.

150.    Defendant Officers, through the actions described above, deprived Ms. Clements of her rights, privileges and immunities secured by the Fourth and Fourteenth Amendments of the Constitution of the United States, by failing to intervene when Defendant Officers were conducting an unreasonable seizure and using excessive force against Plaintiffs' decedent's person.

151.    As a result of Defendant officers' failure to intervene, decedent DECYNTHIA CLEMENTS experienced conscious pain and suffering.

152.    As a result of Defendant officers' failure to intervene, decedent DECYNTHIA CLEMENTS experienced a total loss of her natural life.

153.    As a direct and proximate foreseeable result of the violations of Ms. Clements' constitutional rights, including the rights guaranteed to Ms. Clements by the Fourth and Fourteenth Amendments, and the misconduct of Defendant Officers, as set forth above, Ms. Clements' suffered injuries, including death.

154.    As a result Defendant Officers failure to intervene, Ms. Clements suffered injuries and is entitled to recover all damages allowable for violation of 42 USC § 1983 including compensatory damages, all costs incurred in prosecuting this action, and attorney's fees pursuant to 42 USC § 1988.

155.    Plaintiffs are also seeking punitive damages against Defendant Officers, because the conduct set forth above constitutes deliberate indifference, willful conduct, and intentional conduct towards the public in general and specifically Ms. CLEMENTS.

WHEREFORE, CHEVELLE and HOLLY CLEMENTS, as co-administrators of the Estate of DECYNTHIA CLEMENTS, Deceased, respectfully requests that this Court enter judgment against Defendant Officer JENSEN and the JOHN DOE Elgin Police Officers 1-10, awarding compensatory damages in an amount in excess of seventy-five thousand dollars ($75,000.00), including medical and funeral expenses, attorney's fees, and punitive damages, and for any further relief that this Court deems fair and just.

## COUNT III – Willful and Wanton Conduct - Wrongful Death

### *(Estate of DeCynthia Clements v. City of Elgin)*

156.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein

157.    Plaintiffs as co-administrators of the Estate of DECYNTHIA CLEMENTS, deceased, bring this cause of action pursuant to the provisions of 740 ILCS 180/1, *et seq.*, commonly known as the Illinois Wrongful Death Act.

158. At all relevant times, Defendant CITY OF ELGIN owed decedent DECYNTHIA CLEMENTS a duty to refrain from wanton and willful acts and omissions, which could cause her harm.

159.    That at all times relevant herein, there existed a duty on the part of Defendant, CITY OF ELGIN, to refrain from retaining officers who posed a risk of harm to the public, including DECYNTHIA CLEMENTS.

160.    On March 12, 2018, Defendant Officer JENSEN, acting as a duly authorized agent of Defendant, CITY OF ELGIN, undertook to interfere with and excessively restrain DECYNTHIA CLEMENTS.

161.    At said time and place, Defendant Officer    JENSEN    restrained    DECYNTHIA CLEMENTS through the use of unreasonable and dangerous physical force without justification.

162.    On March 12, 2018, and at all relevant times, the CITY OF ELGIN Police Department, by and through its agents and employees, owed a duty to DECYNTHIA CLEMENTS to refrain from willful and wanton misconduct, including the use of excessive force, during the performance of their duties as police officers.

163. On March 12, 2018, Defendant CITY OF ELGIN breached its duty to decedent DECYNTHIA CLEMENTS by acting willfully and wantonly in continuing to retain Defendant Officer Jensen as an Elgin Police Officer, allowing him to possess deadly weapons, and dispatching him onto the streets of Elgin to interact with civilians under the color of law as an Elgin police officer all while knowing Defendant Officer Jensen had a dangerous propensity and a lack of training enabling him to commit harm, use excessive force, and use deadly force against civilians, like DECYNTHIA CLEMENTS.

164. At the time and place alleged, Defendant CITY OF ELGIN, by and through the acts and/or omissions of its agents, employees, and officers, breached its duty to DECYNTHIA CLEMENTS by acting in an intentional manner, willful and wanton manner, and/or with utter indifference and conscious disregard for DECYNTHIA CLEMENTS' health and safety in one or more of the following respect:

  a.  Shot DECYNTHIA CLEMENTS without lawful justification;

  b.  Discharged a weapon in such a manner as to shoot DECYNTHIA CLEMENTS without justification;

  c.  Discharged a weapon in such a manner as to shoot DECYNTHIA CLEMENTS in an excessive and unreasonable way;

  d.  Used excessive and inappropriate deadly force on DECYNTHIA CLEMENTS;

21

e.  Failed to exercise the proper level of force that was warranted under the circumstances;

f.  Used excessive and inappropriate deadly force without lawful justification;

g.  Failed to use, or allow to be used, less dangerous means of restrain on DECYNTHIA CLEMENTS before using and discharging their firearms, as DECYNTHIA CLEMENTS was not engaged in conduct that would justify such force;

h.  Failed to warn DECYNTHIA CLEMENTS of the impeding use of force;

i.  Failed to implement and adhere to a use of force continuum consistent with that used by law enforcement agencies in Illinois;

j.  Failed to properly instruct, train and implement a sufficient use of force policy or continuum, consistent with that used by law enforcement agencies in Illinois;

a.  Provided inadequate training regarding the detention of suspects, the proper use of force, the appropriate use of deadly force, intervening in the use of excessive force, and de-escalation techniques;

b.  Provided inadequate training regarding how to detain emotionally disturbed persons (EDPs) and/or individuals experiencing mental health episodes;

c.  Provided inadequate training regarding the proper amount of force appropriate in detaining EDPs;

d.  Employed as police officers individuals, such as Defendant JENSEN, who the Defendant CITY OF ELGIN knew or reasonably should have known had a dangerous propensity for using excessive force on suspects and other citizens;

e. Inadequately supervised, controlled, re-trained, and disciplined CITY OF ELGIN police officers, including Defendant JENSEN, who Defendant CIT OF ELGIN knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

f. Failed to terminate CITY OF ELGIN police officers, including Defendant JENSEN, who defendant CITY OF ELGIN knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits; and/or;

g. Was otherwise willful and wanton and/or negligent.

165. As a direct and proximate result of the willful and wanton acts and/or omissions, the decedent, DECYNTHIA CLEMENTS died on March 12, 2018.

166. Decedent DECYNTHIA CLEMENTS, is survived by her son Tyri Clements, her father and siblings.

167. By reason of the death of DECYNTHIA CLEMENTS' heirs have suffered pecuniary damages, including the loss of support, comfort, love, affection, protection and society of decedent.

WHEREFORE, CHEVELLE and HOLLY CLEMENTS, as co-administrators of the Estate of DECYNTHIA CLEMENTS, Deceased, respectfully requests that this Court enter judgment against Defendant CITY OF ELGIN, awarding compensatory damages in an amount in excess of fifty thousand dollars ($50,000.00), and any further relief this Court deems just.

## COUNT IV – Willful and Wanton Conduct - Wrongful Death

### *(Estate of DeCynthia Clements v. Defendant Officer Christian Jensen)*

168. Plaintiffs incorporate all preceding paragraphs as though fully set forth herein

23

169.     Plaintiffs as co-administrators of the Estate of DECYNTHIA CLEMENTS, deceased, bring this cause of action pursuant to the provisions of 740 ILCS 180/1, *et seq.*, commonly known as the Illinois Wrongful Death Act.

170.     At all relevant times, Defendant Officer JENSEN owed decedent DECYNTHIA CLEMENTS a duty to refrain from wanton and willful acts and omissions, which could cause him harm.

171.     At the time and place alleged, Defendant Officer JENSEN, by and through his acts and/or omissions and as an agent, employee, and Elgin police officer of the CITY OF ELGIN, breached his duty to DECYNTHIA CLEMENTS by acting in an intentional manner, willful and wanton manner, and/or with utter indifference and conscious disregard for DECYNTHIA CLEMENTS' health and safety in one or more of the following respect:

      a.  Shot DECYNTHIA CLEMENTS;

      b.  Shot DECYNTHIA CLEMENTS without lawful justification;

      c.  Discharged a weapon in such a manner as to shoot DECYNTHIA CLEMENTS;

      d.  Discharged a weapon in such a manner as to shoot DECYNTHIA CLEMENTS without justification;

      e.  Discharged a weapon in such a manner as to shoot DECYNTHIA CLEMENTS in an excessive and unreasonable way;

      f.  Used excessive and inappropriate deadly force on DECYNTHIA CLEMENTS;

      g.  Failed to exercise the proper level of force that was warranted under the circumstances;

      h.  Used excessive and inappropriate deadly force without justification;

      i.  Used excessive and inappropriate deadly force without lawful justification;

j.  Failed to use, or allow to be used, less dangerous means of restraint on DECYNTHIA CLEMENTS before using and discharging their firearms, as DECYNTHIA CLEMENTS was not engaged in conduct that would justify such deadly force;

k.  Failed to warn DECYNTHIA CLEMENTS of the impeding use of force;

l.  Failed to implement and adhere to a use of force continuum consistent with that used by law enforcement agencies in Illinois;

m.  Was otherwise willful and wanton and/or negligent.

172.  As a direct and proximate result of the willful and wanton acts and/or omissions, the decedent, DECYNTHIA CLEMENTS died on March 12, 2018.

173.  Decedent DECYNTHIA CLEMENTS, is survived by her son Tyri Clements, her father and siblings.

174.  By reason of the death of DECYNTHIA CLEMENTS' heirs have suffered pecuniary damages, including the loss of support, comfort, love, affection, protection and society of decedent.

WHEREFORE, CHEVELLE and HOLLY CLEMENTS, as co-administrators of the Estate of DECYNTHIA CLEMENTS, Deceased, respectfully requests that this Court enter judgment against Defendant JENSEN, awarding compensatory damages in an amount in excess of fifty thousand dollars ($50,000.00), and any further relief this Court deems just.

### COUNT V –Willful and Wanton Conduct- Survival Action

*(Estate of DeCynthia Clements v. Defendant City of Elgin)*

175.  Plaintiffs incorporate all preceding paragraphs as though fully set forth herein

176.     On March 12, 2018, Defendant Officer JENSEN, acting as a duly authorized agent of Defendant, CITY OF ELGIN, undertook to interfere with and excessively restrain DECYNTHIA CLEMENTS.

177.     At said time and place, Defendant Officer     JENSEN     restrained     DECYNTHIA CLEMENTS through the use of unreasonable and dangerous physical force without justification.

178.     On March 12, 2018, and at all relevant times, the CITY OF ELGIN Police Department, by and through its agents and employees, owed a duty to DECYNTHIA CLEMENTS to refrain from willful and wanton misconduct, including the use of excessive force, during the performance of their duties as police officers.

179.     On March 12, 2018, in breach of said duty, Defendant CITY OF ELGIN, by and through its agents, employees and officers, was willful and wanton in one or more of the following respects:

    a.   Shot DECYNTHIA CLEMENTS without lawful justification;

    b.   Discharged a weapon in such a manner as to shoot DECYNTHIA CLEMENTS without justification;

    c.   Discharged a weapon in such a manner as to shoot DECYNTHIA CLEMENTS in an excessive and unreasonable way;

    d.   Used excessive and inappropriate deadly force on DECYNTHIA CLEMENTS;

    e.   Failed to exercise the proper level of force that was warranted under the circumstances;

    f.   Used excessive and inappropriate deadly force without lawful justification;

g.  Failed to use, or allow to be used, less dangerous means of restrain on DECYNTHIA CLEMENTS before using and discharging their firearms, as DECYNTHIA CLEMENTS was not engaged in conduct that would justify such force;

h.  Failed to warn DECYNTHIA CLEMENTS of the impeding use of force;

i.  Failed to implement and adhere to a use of force continuum consistent with that used by law enforcement agencies in Illinois;

j.  Failed to properly instruct, train and implement a sufficient use of force policy or continuum, consistent with that used by law enforcement agencies in Illinois;

k.  Provided inadequate training regarding the detention of suspects, the proper use of force, the appropriate use of deadly force, intervening in the use of excessive force, and de-escalation techniques;

l.  Provided inadequate training regarding how to detain emotionally disturbed persons (EDPs) and/or individuals experiencing mental health episodes;

m.  Provided inadequate training regarding the proper amount of force appropriate in detaining EDPs;

n.  Employed as police officers individuals, such as Defendant JENSEN, who the Defendant CITY OF ELGIN knew or reasonably should have known had a dangerous propensity for using excessive force on suspects and other citizens;

o.  Inadequately supervised, controlled, re-trained, and disciplined CITY OF ELGIN police officers, including Defendant JENSEN, who Defendant CIT OF ELGIN knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

p. Failed to terminate CITY OF ELGIN police officers, including Defendant JENSEN, who defendant CITY OF ELGIN knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits; and/or;

q. Was otherwise willful and wanton and/or negligent.

180. In the course of the aforementioned willful and wanton acts and omissions, Officer JENSEN was acting within the course and scope of his employment with the Defendant CITY OF ELGIN Police Department, and thus the CITY OF ELGIN is liable based on the theory *of respondeat superior.*

181. As a direct and proximate result of Defendants' willful and wanton acts and omissions, DECYNTHIA CLEMENTS suffered damages, including physical and emotional injuries, past medical expenses, and conscious pain and suffering.

182. As a further direct and proximate result of one or more of the foregoing acts and/or omissions, caused Decedent, DECYNTHIA CLEMENTS, to lose her chance of survival.

183. As a further direct and proximate result of Defendants' willful and wanton acts, DECYNTHIA CLEMENTS, suffered injuries of a personal and pecuniary nature, including without limitation, disability, disfigurement, pain and suffering, emotional trauma, and loss of chance of survival, for which DECYNTHIA CLEMENTS would have been entitled to receive compensation from the defendants, had she survived.

184. Plaintiffs, CHEVELLE and HOLLY CLEMENTS, as co-administrators of the Estate of DECYNTHIA CLEMENTS, deceased, bring this action pursuant to the provisions of 755 ILCS 5/27-6, commonly known as the Illinois Survival Statute.

WHEREFORE, CHEVELLE and HOLLY CLEMENTS, as co-administrators of the Estate of DECYNTHIA CLEMENTS, Deceased, respectfully requests that this Court enter

judgment against Defendant CITY OF ELGIN, awarding compensatory damages in an amount in excess of fifty thousand dollars ($50,000.00), and any further relief this Court deems just.

## COUNT VI - Willful and Wanton Conduct- Survival Action

### *(Estate of DeCynthia Clements v. Defendant Officer Christian Jensen)*

185.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein

186.   Plaintiffs, CHEVELLE and HOLLY CLEMENTS, are the duly appointed co-administrators of the Estate of DECYNTHIA CLEMENTS, deceased, having been so appointed by the Circuit Court of Kane County.

187.   On and before March 12, 2018, and at all times relevant hereto, decedent, DECYNTHIA CLEMENTS, was a resident of the City of ELGIN, Kane County, Illinois.

188.   On March 12, 2018, Defendant Officer JENSEN, acting as a duly authorized agent of Defendant, CITY OF ELGIN, undertook to interfere with and excessively restrain DECYNTHIA CLEMENTS.

189.   At said time and place, Defendant Officer JENSEN restrained DECYNTHIA CLEMENTS through the use of unreasonable and dangerous physical force without justification.

190.   On March 12, 2018, and at all relevant times, members of the ELGIN Police Department, including Defendant Officer JENSEN, acting as a duly authorized agent of Defendant, CITY OF ELGIN, owed a duty to DECYNTHIA CLEMENTS to refrain from willful and wanton misconduct, including the use of excessive force, during the performance of his duties as a police officer.

191.   On March 12, 2018, in breach of said duty, Defendant Officer JENSEN was willful and wanton in one or more of the following respects:

a. Shot DECYNTHIA CLEMENTS;

b. Shot DECYNTHIA CLEMENTS without lawful justification;

c. Discharged a weapon in such a manner as to shoot DECYNTHIA CLEMENTS;

d. Discharged a weapon in such a manner as to shoot DECYNTHIA CLEMENTS without justification;

e. Discharged a weapon in such a manner as to shoot DECYNTHIA CLEMENTS in an excessive and unreasonable way;

f. Used excessive and inappropriate deadly force on DECYNTHIA CLEMENTS;

g. Failed to exercise the proper level of force that was warranted under the circumstances;

h. Used excessive and inappropriate deadly force without justification;

i. Used excessive and inappropriate deadly force without lawful justification;

j. Failed to use, or allow to be used, less dangerous means of restraint on DECYNTHIA CLEMENTS before using and discharging their firearms, as DECYNTHIA CLEMENTS was not engaged in conduct that would justify such deadly force;

k. Failed to warn DECYNTHIA CLEMENTS of the impeding use of force;

l. Failed to implement and adhere to a use of force continuum consistent with that used by law enforcement agencies in Illinois; and,

m. Was otherwise willful and wanton and/or negligent.

192.    As a direct and proximate result of Defendants' willful and wanton acts and omissions, DECYNTHIA CLEMENTS suffered damages, including physical and emotional injuries, past medical expenses, and conscious pain and suffering.

30

193.    As a further direct and proximate result of one or more of the foregoing acts and/or omissions, caused Decedent, DECYNTHIA CLEMENTS, to lose her chance of survival.

194.    As a further direct and proximate result of Defendants' willful and wanton acts, DECYNTHIA CLEMENTS, suffered injuries of a personal and pecuniary nature, including without limitation, disability, disfigurement, pain and suffering, emotional trauma, and loss of chance of survival, for which DECYNTHIA CLEMENTS would have been entitled to receive compensation from the defendants, had she survived.

195.    Plaintiffs, CHEVELLE and HOLLY CLEMENTS, as co-administrators of the Estate of DECYNTHIA CLEMENTS, deceased, bring this action pursuant to the provisions of 755 ILCS 5/27-6, commonly known as the Illinois Survival Statute.

WHEREFORE, CHEVELLE and HOLLY CLEMENTS, as co-administrators of the Estate of DECYNTHIA CLEMENTS, Deceased, respectfully requests that this Court enter judgment against Defendant JENSEN, awarding compensatory damages in an amount in excess of fifty thousand dollars ($50,000.00), and any further relief this Court deems just.

## COUNT VII – Battery- Survival Action

### *(Estate of DeCynthia Clements v. Defendant Officer Christian Jensen)*

196.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

197.    Plaintiffs, CHEVELLE and HOLLY CLEMENTS, are the duly appointed co-administrators of the Estate of DECYNTHIA CLEMENTS, deceased, having been so appointed by the Circuit Court of Kane County.

198.    Plaintiffs, CHEVELLE and HOLLY CLEMENTS, as co-administrators of the Estate of DECYNTHIA CLEMENTS, deceased, bring this action pursuant to the provisions of 755 ILCS 5/27-6, commonly known as the Illinois Survival Statute.

199.     On March 12, 2018, Defendant Officer JENSEN willfully and wantonly battered DECYNTHIA CLEMENTS when Defendant Officer JENSEN excessively restrained DECYNTHIA CLEMENTS without justification in one or more of the following respects:

      a.  Shot DECYNTHIA CLEMENTS;

      b.  Shot DECYNTHIA CLEMENTS without lawful justification;

      c.  Discharged a weapon in such a manner as to shoot DECYNTHIA CLEMENTS;

      d.  Discharged a weapon in such a manner as to shoot DECYNTHIA CLEMENTS without justification;

      e.  Discharged a weapon in such a manner as to shoot DECYNTHIA CLEMENTS in an excessive and unreasonable way;

      f.  Used excessive and inappropriate deadly force on DECYNTHIA CLEMENTS;

      g.  Failed to exercise the proper level of force that was warranted under the circumstances;

      h.  Used excessive and inappropriate deadly force without justification; and,

      i.  Used an unreasonable amount of force despite Defendant's knowledge that DECYNTHIA CLEMENTS was not posing a threat of great bodily harm or death upon Defendant or any other person.

200.     These acts constituted harmful and unlawful touching of DECYNTHIA CLEMENTS's person and were conducted without DECYNTHIA CLEMENTS's consent.

201.     As a direct and proximate result of Defendant's acts, DECYNTHIA CLEMENTS suffered damages, including physical and emotional injuries, past medical expenses, and conscious pain and suffering.

202.    As a further direct and proximate result of the foregoing acts Defendant caused Decedent, DECYNTHIA CLEMENTS, to lose his chance of survival.

203.    As a further direct and proximate result of Defendant's acts, DECYNTHIA CLEMENTS, suffered injuries of a personal and pecuniary nature, including without limitation, disability, disfigurement, pain and suffering, emotional trauma, and loss of chance of survival, for which DECYNTHIA CLEMENTS would have been entitled to receive compensation from the defendants, had she survived.

204.    Plaintiffs, CHEVELLE and HOLLY CLEMENTS, as co-administrators of the Estate of DECYNTHIA CLEMENTS, deceased, bring this action pursuant to the provisions of 755 ILCS 5/27-6, commonly known as the Illinois Survival Statute.

WHEREFORE, CHEVELLE and HOLLY CLEMENTS, as co-administrators of the Estate of DECYNTHIA CLEMENTS, Deceased, respectfully requests that this Court enter judgment against Defendant JENSEN, awarding compensatory damages in an amount in excess of fifty thousand dollars ($50,000.00), and any further relief this Court deems just.

### COUNT VIII – Battery - Wrongful Death

#### (Estate of DeCynthia Clements v. Defendant Officer Christian Jensen)

205.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

206.    Plaintiffs, CHEVELLE and HOLLY CLEMENTS, are the duly appointed co-administrators of the Estate of DECYNTHIA CLEMENTS, deceased, having been so appointed by the Circuit Court of Kane County.

207.    Plaintiffs, CHEVELLE and HOLLY CLEMENTS, as duly appointed co-administrators of the Estate of DECYNTHIA CLEMENTS, deceased, bring this cause of action pursuant to the provisions of 740 ILCS 180/1, *et seq.*, commonly known as the Illinois Wrongful Death Act.

208.    On March 12, 2018, Defendant Officer JENSEN willfully and wantonly battered DECYNTHIA CLEMENTS when Defendant Officer JENSEN excessively restrained DECYNTHIA CLEMENTS without justification in one or more of the following respects:

    a.    Shot DECYNTHIA CLEMENTS;

    b.    Shot DECYNTHIA CLEMENTS without lawful justification;

    c.    Discharged a weapon in such a manner as to shoot DECYNTHIA CLEMENTS;

    d.    Discharged a weapon in such a manner as to shoot DECYNTHIA CLEMENTS without justification;

    e.    Discharged a weapon in such a manner as to shoot DECYNTHIA CLEMENTS in an excessive and unreasonable way;

    f.    Used excessive and inappropriate deadly force on DECYNTHIA CLEMENTS;

    g.    Failed to exercise the proper level of force that was warranted under the circumstances;

    h.    Used excessive and inappropriate deadly force without justification; and,

    i.    Used an unreasonable amount of force despite Defendant's knowledge that DECYNTHIA CLEMENTS was not posing a threat of great bodily harm or death upon Defendant or any other person.

209.    These acts constituted harmful and unlawful touching of DECYNTHIA CLEMENTS person and were conducted without DECYNTHIA CLEMENTS' consent.

210.    As a direct and proximate result of the harmful and unlawful touching, the decedent, DECYNTHIA CLEMENTS died on March 12, 2018.

211.    Decedent DECYNTHIA CLEMENTS, is survived by her son Tyri Clements, her father and siblings.

212.    By reason of the death of DECYNTHIA CLEMENTS' heirs have suffered pecuniary damages, including the loss of support, comfort, love, affection, protection and society of decedent.

WHEREFORE, CHEVELLE and HOLLY CLEMENTS, as co-administrators of the Estate of DECYNTHIA CLEMENTS, Deceased, respectfully requests that this Court enter judgment against Defendant JENSEN, awarding compensatory damages in an amount in excess of fifty thousand dollars ($50,000.00), and any further relief this Court deems just.


                                        Respectfully Submitted,

                                        ROMANUCCI & BLANDIN, LLC


Date: June 6, 2018                      s/ Antonio M. Romanucci

                                        Antonio M. Romanucci
                                        Bhavani Raveendran
                                        Nicolette A. Ward
                                        **ROMANUCCI & BLANDIN, LLC**
                                        321 North Clark Street, Suite 900
                                        Chicago, Illinois 60654
                                        (312) 458-1000
                                        Romanucci/ ARDC No.: 6190291
                                        Raveendran/ ARDC No.: 6309968
                                        Ward/ ARDC No.: 6324818
                                        Attorneys for Plaintiffs

                                        Andrew M. Stroth
                                        Carlton Odim
                                        **ACTION INJURY LAW GROUP, LLC**
                                        191 North Wacker Drive, Suite 2300
                                        Chicago, IL 60606
                                        (844) 878-4529
                                        Stroth/ ARDC No.: 6276013
                                        Odim/ ARDC No.: 6182368
                                        Attorneys for Plaintiffs