UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Chevelle & Holly Clements, as <br> Co-Administrators of the estate of <br> DECYNTHIA CLEMENTS, Deceased, <br><br> Plaintiffs, <br> vs. <br><br> CITY OF ELGIN, a municipal corporation; <br> ELGIN POLICE OFFICER Christian Jensen, <br> Individually and as agent of the <br> CITY OF ELGIN, <br><br> Defendants. | Case No. 18 CV 3935 <br><br> Judge John J Tharp <br><br> Magistrate Jeffrey Cole |

## **AFFIDAVIT OF LIEUTENANT CHRISTIAN JENSEN**

Lieutenant Christian Jensen, having been first duly sworn on oath, deposes and states as follows:

1. I am competent to make this affidavit and have personal knowledge of the facts set forth herein.

2. I became a sworn police officer with the City of Elgin Police Department in 1999, became a sergeant in 2011, and a Lieutenant in 2017. I have never discharged a firearm at anyone or used deadly force against any person other than on March 12, 2018.

3. I was on duty on the morning of March 12, 2018, at the scene of the Clements incident on Interstate 90 and I was in charge of the Elgin police response. At the scene I determined that Elgin police would take no aggressive action toward Ms. Clements, would not attempt to physically remove her from her car and would just wait and attempt to communicate with Ms. Clements in an effort to have her voluntarily come out of her car in a peaceful manner.

1

4. While on the scene on Interstate 90 on March 12, 2018, I observed Ms. Clements drive her vehicle forward and backward at least three times and I became concerned that Ms. Clements could cause injury to herself or others if she continued to drive back and forth or attempted to leave the scene by driving to the exit at Route 25.

5. Because I was concerned that the continued movement of Ms. Clements's car could cause injury to herself or others, I determined that it was necessary to park Elgin police vehicles directly in front of and directly behind the Clements vehicle to prevent her vehicle from being driven any distance in any direction.

6. I parked the squad car that I occupied directly in front of Ms. Clements's vehicle, front to front, such that as I sat in the front seat of the squad, its dashboard camera faced directly into the front seat area of Ms. Clements's vehicle. At approximately 2:03:19am on the dashboard video, Ms. Clements was recorded as she lit a piece of paper on fire and tossed it into the backseat of her vehicle. I have reviewed the video recorded by the squad car's dashboard camera and I know that the time identified as 2:03:19am on the video truly and accurately depicts Ms. Clements as she lit the paper and tossed it into her backseat.

7. While at the incident on Interstate 90 involving Ms. Clements, I had my body camera activated and recording and had the dashboard camera of my squad car activated and recording for a brief period of time when my body camera was deactivated. Exhibits X and Y. I have reviewed the video recorded on my body camera and on my dashboard camera on March 12, 2018 and I find that both video recordings truly and accurately depict the events, actions and statements that occurred at the scene on Interstate 90 on March 12, 2018. Specifically, the following events, actions and statements were truly and accurately recorded:

    a) at the time identified as 1:44 to 2:10 on my body camera video I assigned Elgin officers non-lethal devises, the Taser, the 40 millimeter munition and the pepperball to use in the event Ms. Clements came out of the car in possession of knives;

2

b) at the time identified as 2:30 on my body camera video, I stated to Elgin officers on the scene that Sergeant Hartman would be making announcements to Ms. Clements. I assigned Sergeant Hartman to communicate with Ms. Clements because I knew Sergeant Hartman was on scene and was certified in crises intervention;

c) at the time identified as 3:10 on my body camera video I was told by Elgin officers that Ms. Clements possessed a steak knife at her hip and had a screwdriver in her hands;

d) at the time identified as 4:30 on my body camera video I told Elgin officers that in the event Ms. Clements came out of her car and ran at officers with a knife in her hand they were authorized to use their Taser and the 40 millimeter non-lethal munition;

e) at the time identified as 5:24 on my body camera video I assigned Sergeant Hartman to make announcements to Ms. Clements;

f) at the time identified as 12:42 to 13:16 on my body camera video I assigned Officer Schuttrow to the hands team, I told Sergeant Hartman to continue making announcements to Ms. Clements and I heard Sergeant Hartman telling Ms. Clements that no one would hurt her if she came out of her car. It was the responsibility of the hands team to physically remove Ms. Clements from her car at the necessary and appropriate time;

g) at the time identified as 2:03:19am on the *dashboard camera* of my squad car Ms. Clements lights a piece of paper on fire and tosses it into the backseat of her car:

h) at the time identified as 15:04 to 15:50 on my body camera video I communicated by radio to Elgin police officers on the scene and to the dispatcher that a fire had begun in Ms. Clements's car and that we would have to extract her from the car;

3

i) at the time identified as 16:35 to 16:42 on my body camera video I told Elgin officers that we were going to have to get Ms. Clements out of her car and, as I was telling them to 'smash" a car window, Ms. Clements opened the driver's side door of her car;

j) at the time identified as 16:42 to 16:55 on my body camera video Elgin officers were preparing to remove Ms. Clements from her car as she held a knife in each hand and was told by Elgin officers to drop the knives and come out of the car;

k) at the time identified as 16:53 on my body camera video the knives Ms. Clements held in her hands were visible to me, and I and other Elgin officers told Ms. Clements to drop the knives;

l) at the time identified as 16:55 on my body camera video Ms. Clements had come out of her car and was moving quickly toward me with the knives in her hands visible to me and I fired three shots at her to stop what I believed to be a threat of death or great bodily harm to myself and the officers in my immediate vicinity;

m) at the time identified as 17:04 on my body camera video I directed Elgin officers to call the ambulance, which I knew had been staged and on standby on the Route 59 overpass on Interstate 90, to come to the scene.

8. City of Elgin police officers Chad Schuttrow and Matthew Joniak were present at the incident on March 12, 2018 on Interstate 90 and had their body cameras activated and recording the incident.

9. I have reviewed the video recorded by Officer Schuttrow's body camera and, based on my presence at the scene on March 12, 2018, I know that the video truly and accurately depicts those events, actions and statements that I personally witnessed and/or participated in on March 12, 2018 on Interstate 90. Specifically, the following events, actions and statements of March 12, 2018 are accurately depicted on the video recorded by Officer Schuttrow's body camera:

      a) at 7:07:92 GMT the Schuttrow body camera recording truly and accurately depicts the manner in which Ms. Clements exited her vehicle and moved swiftly toward me and Elgin Police Officers Schuttrow, Joniak and Hall who stood within five feet of me;

      b) at 7:07:92GMT the Schuttrow body camera recording truly and accurately depicts the manner in which Ms. Clements held a knife in her left hand as she moved swiftly toward me.

10.    I have reviewed the video recorded by Officer Joniak's body camera and, based on my presence at the scene on March 12, 2018, I know that the video truly and accurately depicts those events, actions and statements that I personally witnessed and/or participated in on March 12, 2018 on Interstate 90. Specifically, the following events, actions and statements of March 12, 2018 are accurately depicted on the video recorded by Officer Joniak's body camera:

      a)    Officer Joniak's body camera recording at 7:07:06 truly and accurately depicts the knife in Ms. Clements's right hand as she exited her car, moved quickly toward me and fell to the ground immediately following the shooting.

11.    When Ms. Clements exited her vehicle, as depicted in Officer Schuttrow's body camera video at 7:07:092, based on my observation of the knife in her right hand, I believed that she had the intent and ability to cause the death of or great bodily harm to myself or the officers that were near me. I was closer than five feet from Ms. Clements as she moved toward me with a knife in each of her hands and I made the decision to stop that threat by firing at Ms. Clements.

12.    After I fired three shots at Ms. Clements, I saw her immediately drop to the surface of the road. Based upon the injury I observed to her head, I believed that Ms. Clements was deceased. I was aware that an ambulance had been staged at the Route 59 overpass on Interstate 90, and I had told Elgin officers to call the ambulance to attend to Ms. Clements and I knew that paramedics would be on scene within a matter of minutes.

FURTHER AFFIANT SAYETH NOT.

_____

SUBSCRIBED and SWORN to before
me this _____ day of **November, 2021**

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
JEFFREY B. JAMROK
Notary Public, State of Illinois
My Commission Expires 09/30/2024