IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Chevelle & Holly Clements, as co- administrators of the estate of DECYNTHIA CLEMENTS, Deceased,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF ELGIN, a municipal corporation, and ELGIN POLICE OFFICERS Christopher Jensen, individually and as agents of the CITY OF ELGIN<br><br>    Defendants. | Case No. 1:18-CV-03935 |

**DEFENDANTS, CITY OF ELGIN AND ELGIN POLICE OFFICER CHRISTIAN JENSEN'S RESPONSE TO PLAINTIFFS' RULE 56(a)(3) STATEMENT OF ADDITIONAL FACTS**

NOW COME Defendants, CITY OF ELGIN and ELGIN POLICE OFFICER CHRISTIAN JENSEN, by and through their attorneys, DeANO & SCARRY, LLC and in Answer to Plaintiffs' Statement of Additional Facts, responds as follows:

1. DeCynthia was not illegally parked when she was first approached by Officer Joniak. Ex. 11 at 7, 160, 288, 305, 313; Ex. 1, 4:21-5:2, 6:5-9.

**RESPONSE: Defendants admit that the factual statements in Paragraph 1 are undisputed.**

2. DeCynthia was not suspected of a crime when Officer Joniak observed her knife, gnashing teeth, dilated pupils, and mashing of gums when parked near a bike trail. Ex. 11, at 33 and 306, Ex. 1, 5:4 – 6:16.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 2 are undisputed.**

3. After first approaching DeCynthia when she was parked near the bike trail,

Officer Joniak testified that he walked away and DeCynthia was free to go because Officer Joniak did not have reasonable suspicion or probable cause to detain her. See Ex. 1, 5:11-6:9; Ex. 2, 51:2-52:2; Ex. 3, 5:8-12.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 3 are undisputed.**

4. Elgin Police officers, including Sergeant Hartman and Defendant Lt. Jensen were informed early in the interaction that DeCynthia had at least one previous suicide attempt that the Elgin Police Department was aware of and had experienced previous mental health crises. Ex. 8, T06:03:10 – T06:03:28; Ex. 29-A, T06:05:58 – T06:06-08, T06:06:40 - T06:06:52; Ex. 19, 01:21:47 – 01:22:40; Ex.10, 24:4-11, 26:4-22; Ex. 5, 29:15-30:7; 83:12-15. Defendant Lt. Jensen relayed that information to Commander Fleury by telephone; all plans for the extraction of DeCynthia, including the decision to pin her car, were made after that information was known by Defendant Lt. Jensen, Sergeant Hartman, and Commander Fleury. Ex. 8, T06:03:10 – T06:03:28; Ex. 29-A, T06:06:01; Ex. 19, 01:21:47 – 01:22:14; Ex. 10, 24:4-11, 26:4-22; Ex. 5, 29:15-30:7, 83:12-15. See also Ex. 37, 100:9-101:10 (Defendant Lt. Jensen told SWAT Commander Jim Lalley that he was in a "pickle" and had a crazy person with a history of suicidal intents).

**RESPONSE: Defendants admit that the factual statements in this Paragraph 4 are undisputed.**

5. Even without being informed that DeCynthia had a previous suicide attempt and recent mental illness, according to standard police practices an officer would have determined that DeCynthia was experiencing a mental health crisis or was under the influence of a controlled substance. Ex. 38 at 15. See also Ex. 41 at 94:3-96:2 (Chief Swoboda testified that DeCynthia was showing clear signs of crisis or mental health crisis, including talking fast and incoherently,

2

not acting rationally, and had placed a knife to her neck which a reasonable officer would have considered threatening a suicidal act.).

**RESPONSE: Defendants admit that the factual statements in this Paragraph 5 are undisputed.**

6. DeCynthia was 5'3 and weighed 103 pounds. Ex 11 at 171; Ex. 24 at 34:2-6.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 6 are undisputed.**

7. Officers should assess a threat using all available information. Exhibit 40, Defendant's Expert Epperson, 60:11-14.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 7 are undisputed.**

8. Trooper Nelson asked Elgin police officers why they were not taking DeCynthia out of the car, and was told that there was case law that prohibited the Elgin Police officers from extracting DeCynthia. Exhibit 30, Officer Nelson Deposition, 44:18-45:4, 81:24-82:15; Exhibit 31, Hillard Heintze Interview of Nelson at 1.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 8 are undisputed.**

9. Officer Joniak had been employed by Elgin Police Department for approximately one and a half years on March 12, 2018. Ex. 11 at 7.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 9 are undisputed.**

10. Officer Hall had been employed by Elgin Police Department for approximately two years on March 12, 2018. Ex. 3 at 3:19-4:2.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 10 are undisputed**.

11. According to the Chief of Police at the time of the incident, the intent of Elgin Police Department's Response to Resistance procedures is to allow Elgin Police officers to use "any other types of tool that we had in our disposal prior to using a firearm," including the 40-millimeter impact weapon, pepperball, and tasers. Ex. 41 at 57:18-24, 58:1-10.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 11 are undisputed.**

12. Defendant Lt. Jensen failed for formulate an effective and safe tactical plan with Elgin Police officers on scene, specifically failing to outline verbal skills and less lethal force options including empty hand, soft or hard hand techniques, K9, Taser, OC spray, pepperball and the 40-millimeter impact weapon. Ex. 38, 18.

**RESPONSE: Defendants admit that the expert witness retained by the Plaintiff gave the opinion and conclusion set forth in Paragraph 12, but deny that said opinions and conclusions are material to the issue of whether the constitutional rights of Ms. Clements were violated.**

13. Defendant Lt. Jensen had not communicated a plan to extract DeCynthia from the vehicle to the other Elgin police officers on scene after an hour and a half. Ex. 3, 29:14 – 30:2; Ex 20, 13:14-22; Ex. 21, 13:9-11; Ex. 22, 32:24 – 33:22; Ex. 23, 10:5-9, 66:7-76:12; Ex. 1, 23:20-24:3.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 13 are undisputed.**

14. Master Sergeant Surz offered several times to provide alternatives to the Elgin police officers on scene. Ex. 8, T06:46:34 – T06:47:06; Ex. 10, 46:17 – 47:4, 47:19-48:12.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 14 are undisputed.**

15. A tactical plan should include only one officer issuing commands at a subject, especially where there is a mental crisis or controlled substance, so that there are not conflicting commands or multiple commands that overwhelm a subject. Ex. 38, 19-20.

**RESPONSE: Defendants admit that the expert witness retained by the Plaintiff gave the opinion set forth in Paragraph 15, but deny that said opinion is material to the issue of whether the constitutional rights of Ms. Clements were violated.**

16. National police standards expect officers to be aware of areas to be utilized for cover if there is an expected armed encounter, including a cement block or portions of a vehicle, both of which were available to Elgin Police officers and Defendant Lt. Jensen on scene on March 12, 2018. Ex. 38 at 28; Ex 34 at 92:15-18. It is policy at Elgin Police Department that officers should avoid unduly jeopardizing their own safety or the safety of others. Ex. 34 at 95:22-96:2.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 16 are undisputed.**

17. Elgin Police officers are trained to build rapport ("trying to get the individual you're speaking with to put more focus on what you're talking about and that you're there to assist them and you're there to help them"). Ex. 39 at 20:2-7, use verbal de-escalation tactics ("provide as much distance as we can, provide a safe distance"), id. at 18:21-19:10, and keep a reactionary

5

gap between themselves and a subject in case the individual "goes from a very lucid state or very compliant state to an agitated or aggressive state." Id. at 19:13- 17.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 17 are undisputed.**

18.  Defendant Lt. Jensen was not CIT certified on March 12, 2018. Ex. 5, 19:12-23, 20:7-17; Ex. 32 at 52:14-53:5.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 18 are undisputed.**

19.  Defendant Lt. Jensen cut off all practical routes of escape for DeCynthia, despite the obvious presence of thick smoke and flames inside of her vehicle. Ex. 6, T07:06:46 – T07:07:05; Ex. 15, T07:06:48 – T07:07:05. The still shots below, the first taken from Officer Joniak's body camera and the second taken from Officer Schuttrow's body camera, depict Defendant Lt. Jensen's position relative to DeCynthia's open door. Ex. 6, T07;06:46– T07:07:05; Ex. 15, T07:07:00 – T07:07:08. Defendant Lt. Jensen stipulated in Paragraphs 57 and 58 of Defendants' Rule 56.1(a)(3) Statements of Fact that these body camera videos truly and accurately depict the events of March 12, 2018, as they unfolded, in particular, the manner in which Ms. Clements exited her vehicle. See ECF 71, ¶¶ 57, 58.

**RESPONSE: Defendants admit that the images displayed in the video exhibits referenced in Paragraph 19 accurately depict the events at the scene of the occurrence on March 12, 2018, but deny that the commentary and conclusions interposed by counsel are accurate or material.**

20.  DeCynthia can be heard screaming in pain before she exited her vehicle. Ex. 15, T07:06:17– T07:06;21, T07:06:51 – T07:07:08; Ex. 29-B, T07:06:12 - T07:06:17, T07:06:54 –

6

T07:07:08. The autopsy report shows that she had indicators of smoke inhalation, including soot buildup near her nose and in her tracheobronchial tree. Ex. 24, 45:20-46:11; Ex. 11, 171, 174. DeCynthia was bent over as she exited her car, avoiding the smoke that was now billowing around her, and took a step away from the flames. Ex. 15, at T07:07:04 – T07:07:09.

**RESPONSE: Defendants admit that the images displayed in the video exhibits referenced in Paragraph 20 accurately depict the events at the scene of the occurrence on March 12, 2018, but deny that the commentary and conclusions interposed by counsel are accurate or material. Defendants admit the factual statements set forth in the autopsy report and referenced in Paragraph 20 are undisputed.**

21. Defendant Lt. Jensen's use of deadly force violated his training in that it was not an immediate defense of life situation and there were other reasonable measures available to him. Ex. 38 at 31; Ex.41, 44:6-23 (DeCynthia had not had physically contacted Elgin Police officers with her vehicle before Defendant Lt. Jensen ordered her car to be pinned between police cruisers); Ex. 41 100:11-17 (Pinning vehicles is not a crisis intervention tactic); Ex. 41, 61:13-18, 62:1-4 (Elgin Police officers are trained to only deploy deadly force against a subject who was posing a threat to someone other than themselves, and to avoid suicide by police if possible); Ex. 21, 43 (possible the shooting could have been prevented); Ex. 20, 49:1-7 (Garcia only armed with a rifle if there were weapons in addition to knives in the car); Ex. 5, 65:11-24.

**RESPONSE: Defendants admit that the expert witness retained by the Plaintiff gave the opinion set forth in Paragraph 21, but deny that said opinion is material to the issue of whether the constitutional rights of Ms. Clements were violated. Defendants admit that the remaining factual statements in this Paragraph 21 are undisputed, but deny that the conclusions and characterizations interposed by Plaintiff are accurate or material.**

22. Hoffman Estates firefighter/paramedics were not dispatched until 2:03 am, an hour and a half after officers pulled up behind DeCynthia on Interstate 90. Ex. 11, 61.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 22 are undisputed.**

23. The Hoffman Estates Firefighter/Paramedics used an AED machine to determine that DeCynthia still had electrical conductivity in her heart when they arrived on scene at 2:13 a.m., at least 5 minutes after DeCynthia had been shot. Ex. 11 at 61, 65, 142, 148, 151, 167; Ex. 33 at 26:8-13; Ex.12 at 41:22-42:15; Ex.14 at 52:12-17.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 23 are undisputed.**

24. Paramedic Bava called the hospital and provided the known information about DeCynthia's condition to the attending in order to determine whether the paramedics should continue resuscitation efforts. Ex. 33 at 26:8-27:4; Ex. 12 at 42:7-11, 44:18-45:2; Ex. 14 at 32:12-20.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 24 are undisputed.**

25. The Elgin Police officers who witnessed DeCynthia's killing were all gathered together after the incident at the police station while they waited for Illinois State Police investigators to arrive. Ex. 5, 80:21-81:20; Ex. 47, 132:10-16; ex. 16, 98:14-20; Ex. 17, 98:1-5; Ex. 46, 107:17-108:9. Defendant Lt. Jensen was not isolated away from the other officers on scene right away. Ex. 37 at 87:9-13.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 25 are undisputed.**

26. Defendant Lt. Jensen had several non-lethal and less-lethal weapons at the scene including at least five tasers, a 40-millimeter impact weapon, and a Pepper Ball launcher on scene and available to him during every stage of his planning. Ex. 5, 69: 8-14, 97:19-98:1; Ex. 4, 29:13-19, 76:10-14; Ex. 2, 35:7-13; Ex. 47, 57:2-6; Ex. 16, 99:23-100:1; Ex. 17, 23:7-12, 47:12-48:2.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 26 are undisputed.**

27. Officer Duffy was assigned the 40-millimeter impact weapon during his midnight shift; however, Defendant Lt. Jensen later told Officer Duffy to go back to Elgin Police Department to get the BATT vehicle and then failed to reassign the weapon to another officer on scene despite other officers being qualified. Ex. 46, 88:3-8; Ex. 5, 71:7-72:13, 97:15-18. The 40-millimeter impact weapon would have been appropriate to use in this situation, according to Elgin Police Department training and policies. Ex. 41, 58:19-24, 59:1-17.

**RESPONSE: Defendants admit that the factual statement in this Paragraph 27 that the 40 millimeter impact weapon was not reassigned to an officer is undisputed. Defendants state that the conclusion that a 40 millimeter impact weapon would have been appropriate in this situation is inadmissible, inaccurate and immaterial to the issue of whether defendant's use of force violated Ms. Clements's constitutional rights.**

28. Defendant Lt. Jensen did not incorporate Officer Garcia in the tactical plan, despite her position on the east side of the median barrier, with her rifle to provide lethal coverage. Ex. 38, 20; see generally Ex. 16.

9

**RESPONSE: Defendants state that the Officer Garcia was incorporated in the tactical plan by virtue of her assignment to provide lethal cover, so, in that regard, the statement in paragraph 28 is disputed**

29. Because the maximum effective range of the 40-millimeter is 2-50 meters and can be used for the incapacitation of an aggressive, non-compliant subject, Ex. 38, 18; Ex. 37, 62:14-19 (range of 5-120 feet); the 40-millimeter creates pain stimulus to gain compliance, while greatly reducing serious life-threatening injuries; and was available to officers with training and all SWAT team officers, Ex. 38, 19; Ex. 37, 50:4-13; it was a poor tactical decision not include or use the pepperball launcher and the 40-millimeter impact weapon with the tactical plan, as they allow officers to maintain a safe distance from an edged weapon and would allow for officers to maintain a safe position of cover behind the I-90 median barrier, Ex. 38 at 27.

**RESPONSE: Defendants admit that the expert witness retained by the Plaintiff gave the opinion set forth in Paragraph 29, but deny that said opinion is material to the issue of whether the constitutional rights of Ms. Clements were violated.**

30. The 40-millimeter impact weapon could have been used to break out the passenger's side windows, including the rear passenger side window, to ventilate DeCynthia's vehicle once smoke was observed. Ex. 38, 27.

**RESPONSE: Defendants admit that the expert witness retained by the Plaintiff gave the opinion set forth in Paragraph 30, but state that the opinion is inadmissible speculation and defendants deny that said opinion is material to the issue of whether the constitutional rights of Ms. Clements were violated.**

31. Either the 40-millimeter impact weapon or the pepperball could have been deployed to incapacitate DeCynthia once a knife was observed without resorting to deadly force.

Ex. 38, 27-28; Ex. 37, 57:18-21; Ex. 41, 56:9-15. SWAT members are trained to use the 40-millimeter impact weapon against people armed with deadly weapons and who is threatening great bodily harm to themselves or others. Ex. 37, 57:18-21, 59:7-12. The 40- millimeter and the pepperball can be used against someone who is actively resisting and can be deployed at a range of 25 feet during an incident, and has a range longer than a taser. Ex. 37, 59:11-12, 60:13-21; Ex. 41, 56:19-57:1.

**RESPONSE: Defendants admit that the expert witness retained by the Plaintiff gave the opinion that the 40-millimeter impact weapon or the pepperball could have been deployed to incapacitate Ms. Clements, but state that the opinion is inadmissible speculation and defendants deny that said opinion is material to the issue of whether the constitutional rights of Ms. Clements were violated. Defendants admit that the general statements in Paragraph 31 regarding the uses and capabilities of the 40-millimeter impact weapon are undisputed.**

32. Elgin police officers also had OC spray, with a range of 6-8 feet. Ex. 37, 50:18-24, 51:11- 13.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 32 are undisputed.**

33. Tasers are less lethal force and all officers have access to tasers. Ex. 37, 51:18-23; Ex. 4, 29:13-19, 76:10-14; Ex. 2, 35:7-13; Ex. 47, 57:2-6; Ex. 16, 99:23-100:1; Ex. 17, 23:7-12, 47:12-48:2. Tasers are operational at 10 feet; while the goal is not to have two officers use taser at the same time, if the officers are at different angles from a subject, they can fire close to simultaneously and remain safe. Ex. 37, 52:19-53:4, 54:6-20.

11

**RESPONSE: Defendants admit that the factual statements in this Paragraph 33 are undisputed.**

34. Elgin SWAT members are trained to use glass break tools on vehicles, but Defendant Lt. Jensen refused to use one on DeCynthia's vehicle. Ex. 37, 65:11-66:8; Ex. 5, 77:22-78:17. Elgin SWAT members had also attended scenario-based training where they disarmed a person with a knife barricaded inside a vehicle using the 40-millimeter impact weapon and pepperball once the car window was broken. Ex. 37, 68:2-14, 68:17-69:22; Ex. 21 at 37, 47 (glass break could be used to get DeCynthia out of the car); Ex. 32, 45:6-13.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 34 are undisputed, but deny they are relevant or material to the matters at issue in this case.**

35. Defendant Lt. Jensen never utilized the SWAT team, despite Elgin Police Department Standard Operating Procedure 46.2, Special Weapons and Tactics Team direction that a SWAT Team should be called for barricaded subjects. Ex. 5, 127:19-128:22, 129:14-130:3; Exhibit 45, Special Operating Procedure 46.2; Ex. 37, 32:7-33:10; Ex. 41, 99:23-24. The SWAT team would have been equipped and trained to resolve a situation with a barricaded subject, which requires specialized training, tools and expertise. Ex. 38, 21. The SWAT team also would have had noise flash diversionary devices, chemical munitions, and the Ballistic Armor Tactical Transport (BATT) vehicle available to them. Ex. 41, 48:7-22, 49:4-12; Ex. 39, 16:10-17. Because DeCynthia was a barricaded subject, this incident would have been an authorized use of the SWAT team. Ex. 41, 47:5-8, 47:15-19, 47:10- 48:1

**RESPONSE: Defendants admit that the factual statement in Paragraph 35 that Lt. Jensen did not call for a SWAT team is undisputed. The remainder of paragraph is speculative and conclusory and immaterial to the issue of the constitutionality of defendants' conduct.**

36. The Elgin SWAT Team had used the 40-millimeter impact weapon in several situations with armed subjects:

- To disarm a man with a machete, when there was a vehicle and a porch between the firing officer and the subject, at a distance. The 40-millimeter impact weapon was used safely, the subject was shot in the thigh, dropped the machete, and was incapacitated. Ex. 37, 63:1-6, 77:5-9.
- To disarm a man claiming to have a handgun at 120 feet. Id. at 63:8-17.
- To disarm an individual threatening to use knifes to stab the police, had let dogs out to attack people, and had pointed a gun at a family member. Id. at 63:8-17.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 36 are undisputed, but deny they are material to issue of the constitutionality of defendants' conduct.**

37. Elgin SWAT had also responded to other episodes of armed barricaded subjects and properly used negotiation tactics. Ex. 37, 73:8-74:22.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 37 are undisputed, but deny they are material to issue of the constitutionality of defendants' conduct.**

38. In one incident, 6-10 SWAT members responded to a suicidal person with a butcher knife who threatened Elgin Police officers, had battered his girlfriend, was barricaded inside a home with two children, was threatening suicide, brandishing a knife, wanted police to kill him, and was isolated in an apartment. Ex. 37, 73;8-74;22. Elgin SWAT talked to him through an open window for two hours, the subject eventually handed a child out, and after three

13

hours a negotiator arrived, the second child was released and the subject eventually put his knife down and was taken peacefully into custody. Ex. 37, 73:8-74:22.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 38 are undisputed, but deny they are material to issue of the constitutionality of defendants' conduct.**

39. The concrete median barrier was a tactical advantage, but Defendant Lt. Jensen failed to use the barrier as cover. Ex. 5, 93:93:17-19, 97:6-14; Ex. 37, 93:14-17, 94:15-95:9; Ex. 1, 36:14-18 (officers not in a tactically sound position when over the barrier to extricate); Ex. 32, 12:5-10 (tactical position was the opposite side of the barricade); Ex. 20, 21:6-20 (officers over the barrier were "not in a safe space). Vehicles can also be used as cover. Ex. 40, 56:13-17; Ex. 37, 94:15-95:9; Ex. 39, 16:10-17. Officers should be prepared to affect a tactical retreat if available and necessary. Ex. 40, 60:7-10. The barrier was approximately hip-height, and could be crossed by "slid[ing] over on my hip" without the use of two hands. Ex. 37, 108:8-15. Nevertheless, officers never jumped back over the barrier after DeCynthia opened her car door. Ex. 41, 98:3-9.

**RESPONSE: Defendants admit that the factual statements set forth in paragraph 39 that Lt. Jensen and other Elgin police officers did not use the barrier as cover are undisputed, but object to the argumentative nature of the statements and any inferences arising therefrom. The remaining factual statements in Paragraph 39 are undisputed, but are immaterial to the issue of the constitutionality of defendants' conduct.**

40. Elgin Police Officers did not feel threatened by DeCynthia. Ex. 2, 66:22 – 67:7; Ex. 28, 162:8-10; Ex. 47, 85:10-19; Ex. 17, 64:5-16; Ex. 16, 114:21-24; Ex. 5, 30:23-31:10, 66:10- 23, 68:9-11, 144:11-15.

**RESPONSE: Defendants admit that the factual statements in paragraph 40 are undisputed insofar as the precise time during the incident to which the statements refer. Defendants deny that the statements, and supporting materials, refer to the point in time when Ms. Clements emerged from her vehicle with knives in both hands. The statements refer to a point in time irrelevant and immaterial to the issue of the constitutionality of defendants' conduct.**

41. Defendant Lt. Jensen was not disciplined by the Elgin Police Department for the incident involving DeCynthia. Ex. 37, 29:15-19; Ex. 34 (Part 2) 39:5-8, 46:15-22; Ex. 41, 70:12

**RESPONSE: Defendants admit that the factual statement in this Paragraph 41 is undisputed, but deny it is material to issue of the constitutionality of defendants' conduct.**

42. As a 30(b)(6) policy witness and policy-maker, Chief Ana Lalley, in describing "objective reasonableness" in Elgin Police Department use of force policies as subjective reasonableness, stating "the reasonableness is determined by the officer themselves, and each individual officer would have to make that determination of reasonableness provided the facts that are presented before them," and "So the reasonableness would be determined by the officer who chooses then to use deadly force. And again that is contingent upon the officer's own determination based upon what's presented before them." Ex. 34, 86:13- 88:6.

**RESPONSE: Defendants admit that the statements in Paragraph 42 were made by the deponent and accurately quoted herein**.

43. Elgin Police officers including Defendant Lt. Jensen, were aware of the following crisis intervention and de-escalation tactics through policies and training: calming the situation, eliminating lights and sirens, dispersing crowds, assuming a calm nonthreatening demeanor, providing distance and a reactionary gap, using tone and empathy, not using repetitive

15

commands, developing rapport, using a person trained in crisis communication, observing nonverbal communication signs about being uncomfortable with the number of officers, and using time. Ex. 27; Ex. 39, 18:21-19:10 ("Provide as much distance as we can, provide a safe distance. Kind of like a reactionary gap"…"trying to build some form of rapport with someone who is having a mental crisis"…); Ex. 38, 16; Ex. 41 at 42 (SOP 45.2.3 indicates officers should calm the situation, eliminate emergency lights and sirens, disperse crowds, assume a quiet nonthreatening disposition); Ex. 34, 68:19-69:11; 74:11-24; 76:5-15; 102:1-9, 122:7-11; Ex. 5, 12:3-5, 58:13-19 ("Everyone knows you don't force a confrontation on a suicidal individual if you do not have to"); Ex. 20, 29:8-12.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 43 are undisputed, but deny they are material to issue of the constitutionality of defendants' conduct.**

44. Officers are trained that louder, more aggressive commands may not have a calming effect on an individual experiencing a mental health crisis. Ex. 34, 77:16-24.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 44 are undisputed, but deny they are material to issue of the constitutionality of defendants' conduct.**

45. Officers did not utilize de-escalation and crisis intervention techniques they had been trained on. Ex 9, 01:57:30 - 02:01:00; Ex. 15, T07:06:57 – T07:07:10; Ex. 41, 44:2-5 (officers did not eliminate emergency lights); Ex. 9, 01:57:30 - 02:01:00; Ex. 19, 02:00:25 – 02:01:00; Ex. 39, 18:21-19:19, 19:13-17; Ex. 38 (16 officers did not use defusing techniques, active listening skills, nonrepetitive commands, time, distance, or proper tone or empathy with DeCynthia); 60:7-10 ("on a suicidal individual who only poses a threat to themselves at that

16

point, who is not actively being an aggressor on you, do not put yourself in a position to force a confrontation.")

**RESPONSE:  The assertions in Paragraph 45 are improper argument and misleading characterizations and conclusions based on disjointed pieces of video and testimony and are therefore disputed. The statements in paragraph 45 are also vague and conclusory and immaterial to issue of the constitutionality of defendants' conduct.**

46. Elgin Police Department did not require CIT or de-escalation techniques be implemented or the CIT team be utilized in mental health situations. Ex. 39, 41:20-24 (only receiving CIT training after 2018); Ex. 34, 85:16-10:24 ("Q: When time permits and the scene is safe, officers should also consider de-escalation strategies to bring the situation under control… Can you describe what is meant by when time permits and the scene is safe? A: Again it would be situational, you know, and that would be something that an officer would have to make that determination based upon the totality of circumstances that are presented before them through their assessment of what's happening, what information is provided to them. Is there something that occurs where they have to react immediately? Is there, you know, what is the availability of resources? Have the resources arrived? So it's dependent and contingent upon each circumstances which can change throughout from the time the officer arrives to by the time the officer leaves."); id. at 90:9-18 (Officers should consider de-escalation strategies when appropriate and when they can); id. at 121:16-22 (officers are able to use de-escalation tactics when encountering a subject who may be experiencing an emotional disturbance or mentally ill when appropriate and based on the circumstances of the situation); id. at 35:3-24 (Collaborative crisis unit not in existence until after the March 12, 2018 incident); id. at 64:4- 11 (officers may request a crisis intervention officer when responding to persons with mental illness); id. at 68:6-

11 (responding officer could determine to handle subjects that were mentally ill without requesting an officer with crisis intervention training); Ex. 26 (de- escalation can be "considered"); Ex 49, 5; Ex. 1, 45:18-20 (Officer Joniak doesn't recall if mental illness ever came into his mind).

**RESPONSE: The statement that "Elgin Police Department did not require CIT or de-escalation techniques be implemented or the CIT team be utilized in mental health situations" is not found in the supporting material cited and for that reason the statement is disputed. Elgin Police Sergeant Hartman was certified by the State of Illinois in crisis and hostage negotiation since 2004 and received specific training on de-escalation and negotiating with people experiencing a mental health crisis. Prior to 2018 Sergeant Hartman utilized his crises intervention skills on patrol and on SWAT calls, including situations where a subject was armed, to attempt to ensure that incidents did not escalate and would end peacefully. Defendants' SOF 16, 17, 20-24.**

47. Defendant Jensen previously disarmed at least three suicidal subjects with knives without firing a gun. All of those individuals were white or Hispanic but not black. Ex. 44, Jensen Use of Force Reports, 1-5 (Suicidal white female with knife, would not drop in response to officer commands, walked towards officers with knife pointed at her own stomach, Taser used, Jensen did not discharge firearm as cover officer); id. (suicidal Male Hispanic with self-inflicted knife laceration, taken to ground); id. (Male Hispanic with knife, stating "shoot me", handgun drawn but not pointed, arm wrist control used).

**RESPONSE: Defendants admit that the factual statements in this Paragraph 47 are undisputed, but deny they are material to issue of the constitutionality of defendants' conduct.**

48. Medical Examiner Steven White found only superficial abrasions on DeCynthia's neck and no signs that she had stabbed herself during the incident. Ex. 24, 41;12-22.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 48 are undisputed.**

49. Setting a car on fire is not a crime as long as an insurance claim is not made for the damage. Exhibit 50, Fire Marshall Kushner Deposition, 22:23-23:17.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 49 are undisputed.**

50. Reviews by Hillard Heintze found Defendant Lt. Jensen to be in violation of several Elgin Police Department policies. Ex. 49 at 15-17; Ex. 41, 77:12-18, 74;13-20; see Generally Ex. 42 (Chief Lalley finding the officers' actions in compliance with the policy).

**RESPONSE: Defendants admit that the factual statements in this Paragraph 50 are undisputed, but deny the violations referenced were of substance or were the equivalent of constitutional violations and further deny that they are material to the issue of the constitutionality of defendants' conduct.**

51. The Center for Policing Equity, submitted a report and data to Chief Lalley that has not been made public to date. Exhibit 35, CPE Emails, CPE000001.

**RESPONSE: Defendants admit that the factual statements in this Paragraph 51 are undisputed, but deny they are material to issue of the constitutionality of defendants' conduct.**

52. Elgin Police Department was aware that Black people were subject to force 9.3 as often as white subjects." Ex. 35, CPE000009.

**RESPONSE:  Defendants admit that the assertion in Paragraph 52 appears in the**

19

**supporting material, but denies that it is material or relevant to the issues raised in Plaintiffs Amended Complaint.**

53. Elgin Police were trained that there is a black-crime blink response, meaning that "exposure to Black male faces facilitated the identification of crime-relevant objects" and also people of color are disproportionately represented among people who commit street crimes. Exhibit 43, Fair and Impartial Policing Powerpoint, 2-3 ("Is there some fact at the root of 'stereotype', including the Black-crime association?... Yes!!!"). Elgin Police officers are also trained that policing based on stereotypes can be ineffective and unsafe. Id.

**RESPONSE: Defendants admit that Elgin Police Officers received the training referenced in Paragraph 53, but deny that the assertions in Paragraph 53 are accurate, properly supported or material to the issue of the constitutionality of defendants' conduct.**

          DeANO & SCARRY, LLC

                    s/James L. DeAno
                Attorney for Defendants

James L. DeAno
DeAno & Scarry, LLC
53 W. Jackson Blvd.
Suite 1610
Chicago, IL 60604
630-690-2800
jdeano@deanoscarry.com